UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE RECEIVERSHIP ESTATE OF AUDIENCESCIENCE INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, et al.,<br><br>Defendants. | Case No.  5:22-cv-04756-EJD<br><br>**CLAIM CONSTRUCTION ORDER** |

Plaintiffs Receivership Estate of AudienceScience Inc. and Revitalization Partners, LLC brings this suit against Defendants Google LLC and YouTube LLC for infringement of three patents, entitled "Selecting an Advertising Message for Presentation on a Page of a Publisher Web Site Based Upon Both User History and Page Context." The parties dispute the construction of six terms. After careful consideration of the available intrinsic and extrinsic evidence, as well as the parties' arguments at hearing, the Court construes the disputed terms as set forth below.

**I.    BACKGROUND**

Plaintiffs accuse Defendants' YouTube, Discovery, and Gmail products of infringing three patents relating to digital advertising and targeting. Compl. ¶¶ 21, 42, 64. The three patents-in-suit—U.S. Patent Nos. 7,747,676; 7,882,175; and 8,082,298—are all titled, "Selecting an Advertising Message for Presentation on a Page of a Publisher Web Site Based Upon Both User History and Page Context." *Id.* ¶¶ 13–15. All three patents are family members that share the same written description and relate to the same 2004 provisional application. Pls.' Responsive Claim Construction Br. ("Pls. CC Br.") 1, ECF No. 75. As described, these patents claim a

Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER

1

1   method by which an advertisement would be selected and presented to an Internet user based on

2   both the user's browsing history and the content of the specific web page.

## II.     LEGAL STANDARD

### A.     Claim Construction

Claim construction is a question of law to be decided by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (citation omitted). Consequently, courts construe claims in the manner that "most naturally aligns with the patent's description of the invention." *Id.* (citation omitted).

When construing disputed terms, courts begin with "the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) (citations omitted). That is because "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (citation omitted). The words of a claim should be given their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312–13 (citations omitted). A person of ordinary skill in the art ("POSITA") "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. Thus, courts "have long emphasized the importance of the specification in claim construction." *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016) (citation omitted). They have explained that the specification is "always highly relevant" and "[u]sually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

The prosecution history of a patent—which "consists of the complete record of the

Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER
2

proceedings before the PTO [Patent and Trademark Office]"—is also intrinsic evidence of a claim term's meaning. *Id.* at 1317. But since the prosecution history "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Any limitation or disclaimer of claim scope based on prosecution history must constitute "unmistakable [and] unambiguous evidence of disclaimer." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003) (internal citations omitted).

Finally, the court is also authorized to consider extrinsic evidence, such as "expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980 (internal citations omitted). Although the court may consider evidence extrinsic to the patent and prosecution history, such evidence is considered "less significant than the intrinsic record" and "less reliable than the patent and its prosecution history in determining how to read claim terms." *Phillips*, 415 F.3d at 1317–18 (citation omitted). While extrinsic evidence may be useful in claim construction, ultimately "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence" and may not be used to "contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id*. at 1319, 1324.

### B.    Indefiniteness

The definiteness requirement of title 35, section 112 of the United States Code mandates that a specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). This requirement entails a "delicate balance" between "the inherent limitations of language" and the need to "be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909 (2014) (brackets and quotations omitted). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 901. "The definiteness requirement, so understood, mandates clarity, while recognizing that

absolute precision is unattainable." *Id.* at 910. The party asserting indefiniteness must prove it by clear and convincing evidence. *See, e.g.*, *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

One example of how "a claim could be indefinite [is] if a term does not have proper antecedent basis where such basis is not otherwise present by implication or the meaning is not reasonably ascertainable." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). "For a claim term to have antecedent basis support, an indefinite article (for instance, 'a' or 'an') must precede a claim term the first time the claim term is used in the claims. Subsequent references in the claims to the claim term must be preceded by a definite article (for instance, 'the' or 'said')." *Sensor Elec. Tech., Inc. v. Bolb, Inc.*, 2019 WL 4645338, at *31 (N.D. Cal. Sept. 24, 2019). However, the absence of an antecedent basis does not automatically trigger a finding of indefiniteness. *See In re Downing*, 754 F. App'x 988, 996 (Fed. Cir. 2018) ("A claim term that lacks an antecedent basis may, but does not necessarily, render a claim indefinite."); *see also Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1376 (Fed. Cir. 2008) (noting "the well-settled rule that claims are not necessarily invalid for a lack of antecedent basis"); U.S.P.T.O., Manual Patent Examining Proc. § 2173.05(e) ("Obviously, however, the failure to provide explicit antecedent basis for terms does not always render a claim indefinite."). "As long as the claim 'apprises one of the ordinary skill in the art of its scope and, therefore, serves the notice function required by [Section 112(b)],'" it is not error for a court to reject a request to find the claim term indefinite. *Downing*, 754 F. App'x at 996.

## III. DISCUSSION

As a general matter, Defendants have offered separate constructions or asserted indefiniteness, while Plaintiffs have taken the position that none of the disputed terms require construction or are indefinite. *See* Defs.' Opening Claim Construction Br. ("Defs. CC Br."), ECF No. 70; Pl. CC Br.; Defs.' Reply Claim Construction Br. ("Defs. CC Reply"), ECF No. 79. Although Plaintiffs offer no proposed constructions, their briefing occasionally includes commentary on how certain terms should be construed.

Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER
4

A.   *"web page"* ('676, '175, '298 Patents)

| Plaintiffs' Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| No construction necessary | "a page from a website on the World Wide Web, identified by a unique uniform resource locator (URL) and displayed by a web browser" | "a page from a website on the World Wide Web, identified by a unique uniform resource locator (URL)" |

This disputed term typically appears in the following context: "A method performed by a computing system having a processor and a memory for selecting an advertising message for inclusion in a requested web page, comprising: . . . ." U.S. Patent No. 7,747,676 ("'676 Patent") col. 9 l. 36; *see also* Defs. CC Br. 2–3; Pl. CC Br. 1–7. Defendants propose the following construction: "a page from a website on the World Wide Web, identified by a unique uniform resource locator (URL) and displayed by a web browser." Plaintiffs assert three objections to Defendants' construction: (1) a "web page" need not be on the World Wide Web; (2) a "web page" need not be identified by a URL; and (3) a "web page" need not be displayed at all, let alone by a web browser. The Court addresses Plaintiffs' arguments in turn.

World Wide Web: With respect to the purported "World Wide Web" limitation, the Court agrees with Defendants that this construction is supported by the intrinsic evidence. First, it is somewhat evident by the ordinary meaning of the disputed term itself ("*web* page") that the term contemplates some involvement with the World Wide *Web*. Second, turning to the claim language context, nearly every instance of "web page" is preceded by the word "requested" or followed by "request." *See, e.g.*, '676 Patent col. 9 l. 36; '175 Patent col. 10 l. 32–33; '298 Patent col. 10 l. 24. As described by the specification, a "request" means that a user is "visiting" the page, which indicates that the "web page" must have access to and presence on some kind of network "such as via the Internet." *See* '676 Patent col. 1 l. 25–27; col. 4 l. 51–52. Finally, although patent figures do not create limitations in and of themselves, it is at least relevant that every example under the "page" columns in the figures are preceded by an "http://www." *See* '676 Patent figs. 2, 4, 8.

Plaintiffs' primary rejoinder is that a local, draft, or unpublished "web page" (*i.e.*, one that is *not* connected to the World Wide Web) is still a "web page." Pl. CC Br. 2. However, the

Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER

5

specification does not refer to these pages as "web pages"; rather, it refers to draft or unpublished content as "personal pages." *See* '676 Patent col. 4 l. 11–14 ("For example, a publisher of a social networking web site that permits its users to create and modify *personal pages* . . . may submit to the facility certain text entered by the user into his or her *personal page*."); col. 8 l. 48–50 ("The display comprises a display for editing a *personal page* corresponding to a particular user."). Such draft or local pages also cannot be "requested" by an Internet user, as contemplated by the claim language. *Id.* col. 1 l. 36. And although it is perhaps conceivable that pages on private intranet servers could also be considered a "web page," *see id.* col. 4 l. 51–52 (listing the Internet only as an example of a "network connection for connecting the computer system to other computer systems"), the fact that the patented technology pertains to electronic advertising would suggest to a POSITA that "web page" is unlikely to encompass pages on a private intranet server. In sum, Plaintiffs' argument against the World Wide Web limitation is unpersuasive and unsupported by the intrinsic evidence.

<u>Identifiable by URL</u>: For similar reasons, the Court finds that the URL language is also supported by the intrinsic evidence. As the Court highlighted already, all the example "pages" in the patent are identified by a URL. *See* '676 Patent figs. 2, 4, 8 (providing example pages that all begin with "http://www.xyz.com"). The specification describes these diagrams as "identifying the page, such as by *its URL* or a fragment thereof." '676 Patent col. 5 l. 3–4, l. 46–47.

Plaintiffs' objections to the URL language are largely the same as its objections to the "World Wide Web" reference, specifically that it does not account for unpublished web pages. The Court rejects these arguments to the extent they reiterate Plaintiffs' previous theories. Plaintiffs also contend that some web pages do not have unique URLs because web pages may change over time or the same web page may be located on mirror sites. Pl. CC Br. 3–4. However, Plaintiffs' hypotheticals are not necessarily excluded by Defendants' URL language. A URL that refers to a single dynamic web page is still "unique" to the extent that it points to only one page, as are multiple URLs that point to the same page. *See id.* at 3–4. The Court does not find that these hypotheticals substantiate Plaintiffs' objection.

Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER
6

Displayed by Web Browser:  The Court, however, does not find Defendants' final limitation to be supported by the intrinsic evidence.  To begin, none of the patents-in-suit mention a web browser at any point.  Nor does the patent elaborate on the specifics of how a "web page" should be "displayed."  In fact, most references to "display" does not refer to a "web page," but rather an advertising message that is being "displayed" on a page.  *See, e.g.*, col. 9 l. 59–60 ("display the selected advertising message within the page"); col. 10 l. 16–17 ("select an advertising message for display within the page").  Defendants have not directed the Court to any intrinsic evidence that supports this "web browser" limitation nor do their extrinsic evidence indicate that a web browser is inherent to the ordinary meaning for "web page."  *See* Defs. CC Br. 2–3.  Meanwhile, Plaintiffs have proffered extrinsic evidence indicating that web pages need not be displayed only on web browsers but may also be displayed using, for instance, email applications.  *See* Pl. CC Br. 5; CC Hr'g Tr. 46:10–47:6.  Accordingly, the Court will decline to construe "web page" to encompass this web browser limitation.

To summarize, the Court finds that the intrinsic evidence supports most of Defendants' proposed construction but not the limitation requiring a "web page" to be displayed by a web browser.  The Court will construe "web page" to mean "a page from a website on the World Wide Web, identified by a unique uniform resource locator (URL)."

**B.     "keywords" ('676, '175, '298 Patents)**

| Plaintiffs' Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| No construction necessary | "words selected to describe the content of a web page or advertising message" | "words selected to correspond to a web page or advertising message" |

This disputed term appears typically in the context of how web pages can be distilled into a set of keywords that may then be compared with a separate set of keywords distilled from advertising messages.  For instance, "using a mapping from pages to keywords describing those pages to identify a set of keywords each mapped to from at least one of the pages listed in the page request history."  '676 Patent col. 9 l. 41–43.

Defendants propose the following "plain and ordinary" construction for "keywords":

Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER
7

1  "words selected to describe the content of a web page or advertising message." Plaintiffs submit
2  that a keyword is self-explanatory ("simply a term that is key (e.g., significant)") and, therefore,
3  does not require further construction. Pls. CC Br. 7. Plaintiffs also oppose three purported
4  limitations in Defendants' construction: (1) keywords are not limited to words and may include
5  terms and phrases; (2) keywords need not "describe" anything; and (3) keywords need not be
6  selected to describe content, let alone the content of pages or ads.

7  Plaintiffs' first objection to Defendants' "words" limitation is misplaced. Plaintiffs
8  primarily take issue with the fact that "keywords" may also include terms and phrases, *i.e.*, more
9  than a single word. Pl. CC Br. 7–8. However, Defendants' construction plainly defines keywords
10 as "*words* selected to describe." The Court does not read the Defendants' construction to imply
11 that a keyword may only consist of a single word or that the construction excludes "terms,"
12 "phrases," and other conglomerations of words. Indeed, Defendants have disclaimed any such
13 implication. Defs. CC Reply 4 ("The plain-meaning construction offered by Defendants include
14 the plural 'words' instead of the singular 'word' precisely to encompass both singular terms and
15 multi-word phrases."). The Court does not find it necessary to add "phrases" or "terms" that
16 simply refer to multi-word concepts already captured by "words" in Defendants' construction.

17 Plaintiffs' second and third arguments—that "keywords" do not necessarily need to
18 describe a web page's or advertising message's content—have somewhat more currency.
19 Although Defendants are correct that the claim language suggests that "keywords" are descriptive,
20 *see, e.g.*, '676 Patent col. 9 l. 41–47 ("keywords describing those pages" . . . "advertising
21 messages described by those keywords"), the claim language does not suggest that keywords
22 *exclusively* "describe." For example, Claim 10 of the '676 Patent refer to "keywords" that
23 "correspond" to certain electronic content in web pages or advertising messages. '676 Patent col.
24 11 l. 7–12 ("keywords identified as *corresponding* to the instance of electronic content . . .
25 advertising messages identified as *corresponding* to the distinguished keyword"); *see also id.* col.
26 8 l. 15–16 ("the facility collects keywords identified in step [] as *corresponding* to the pages
27 recently visited"). And the patent specification frequently refers to "keywords" as simply those
28 Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER

8

that are "*attributed* to the page." *Id.* col. 5 l. 5 (emphasis added); *see also, e.g.*, id. col. 6 l. 6–10 ("a page to which the keyword is *attributed* . . . a page to which the keyword 'films' is *attributed*") (emphasis added), col. 7 l. 43–44, 61–62 ("no keywords are *attributed* to the home page"). These instances would indicate to a POSITA that "keywords" are not limited to "describing" the content of a web page or advertisement; "keywords" can simply be "corresponding" or "attributed" to a web page or advertisement.[1] As a result, the Court finds that the term "keywords" encompass a broader scope of functions and is not limited to "describing," as Defendants suggest.

Although the term "keywords" does not require an element of description or a nexus to the content, the Court finds that the "selected" language in Defendants' construction is supported by the plain and ordinary meaning of the term. Even if a keyword has no immediately apparent nexus to the referenced content, the keyword must still nonetheless be selected from any number of other words to represent the content. The specification reflects this understanding when it distinguishes "raw text" (where a publisher is "uncertain whether the text is composed exclusively of keywords likely to be useful") from "qualified text" (which is "text [that] contains only keywords likely to be useful"). '676 Patent col. 3 l. 63–col. 4 l. 6. For "raw text," the specification necessarily envisions some kind of process that filters out "keywords" from other words in the text. Plaintiffs also contend that some keywords are not selected *per se*, because they may be extrapolated from a "search query, or a raw text file" or by comparing text against a long list or set of keywords, as well as generated through automated techniques. Pl. CC Br. 9–10. These arguments, however, only provide examples of different *sources* for keywords and do not change the fact that the keywords in those examples are nonetheless *selected*, through automation or otherwise.

In sum, the Court finds that Defendants' construction of "keywords" is supported to the extent it involves "words" and "selection." However, the Court finds that a POSITA would not

---

[1] The injection of "describing" into the construction of "keyword," as Defendants do so here, would also render superfluous and redundant those instances where "keyword" and "describing" are set forth as separate terms, *e.g.*, "keywords describing those pages." *See Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369 (Fed. Cir. 2007) ("To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.").

necessarily understand "keywords" to only be capable of "describing" a web page's or advertising message's "content," and that a broader term is warranted. Accordingly, the Court will construe "keywords" to mean "words selected to correspond to a web page or advertising message."

### C. "pages recently [requested / visited] by the user" ('676, '175, '298 Patents)

| Plaintiffs' Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| No construction necessary | Indefinite | Not indefinite |

This set consists of two related terms: (1) "pages recently requested by the user" and (2) "pages recently visited by the user."[2] *See, e.g.*, '676 Patent col. 9 l. 40, col. 10 l. 4. Defendants contend that these terms are indefinite because they are "terms of degree," and the specification does not provide any standard for measuring that degree. Defs. CC Br. 6–7. Plaintiffs counter that these terms are not actual "terms of degree," but, even if it were, the specification provides objective boundaries for "recently visited" or "recently requested." Plaintiffs also associate these terms with the well-known and similar concept of "recently visited" in web browsers, such as Internet Explorer.

Although "recently" may appear to be a descriptive term of degree, the Court agrees with Plaintiffs that "recently" visited or "recently" requested—as used in this patent and within these claims—are not the type of "[t]rue, descriptive words (or terms of degree) in a claim [that] may inherently result in broader claim scope." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347 (Fed. Cir. 2022). In many respects, the "recently" terms may be more accurately described as references to a configurable length of time that practitioners can set up themselves, as opposed to a descriptive term for subjective temporal recency. This is most clearly demonstrated by the specification's discussion of Figure 4, which is a "table diagram showing a sample browsing history table typically used by the facility to identify pages of the publisher site recently visited by the user." '676 Patent col. 5 l. 37–39. In describing how this browsing history table may be generated, the specification notes that a practitioner can use the recorded time of visit to

---

[2] Because the patents indicate that "requesting" a page is synonymous with "visiting" the page, '676 Patent col. 1. 26–7, the Court will refer to both terms collectively as the "'recently' terms."

Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER
10

"expire rows of the browsing history table that reflect browsing more than a configurable length of time ago, such as an hour, a day, a week, or a month." *Id.* col. 49–53. In other words, the specification contemplates that practitioners will decide for themselves how far back to look when mapping and analyzing a user's "recently requested" or "recently visited" pages in Claims 1 and 2 of the '676 Patent. This would inform a POSITA that the "recently" terms do not delineate a temporal limitation for the claim scope; instead, these terms simply describe a functionality that would permit practitioners to control how much browsing history to include.[3] Moreover, there is no support in the claim language or specification for Defendants' proposed limitation based on the temporal scope of the "page request history." To the contrary, the specification states that a "configurable length of time" can be "an hour, a day, a week, or a month," implying that the length of the "look-back" period can vary significantly. '676 Patent col. 5 l. 52–53. In sum, a POSITA would understand that a practitioner can decide for herself how long ago "recently visited" should be for the purposes of capturing a user's browsing history and, therefore, the "recently" terms are not true descriptive terms or terms of degree.

        Consistent with the Court's finding here, the Federal Circuit has also held that a facially descriptive term ("similar") was not a true term of degree based on the patent's specific context. In *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345 (Fed. Cir. 2022), the Federal Circuit rejected an analogous term-of-degree indefiniteness argument for the term "similar" where the indefiniteness proponent "pos[ed] a series of rhetorical questions to show its varying interpretations of the [] term," much like Defendants do here. *See* Defs. CC Br. 10–11; Defs. CC Reply 7–8. In holding "similar" to be sufficiently definite, the Federal Circuit noted that the claim language "[did] not use the term similar in isolation as a term of degree but in the context of a self-referential or self-repeating geometric pattern for configuring microphones in an array." *Id.* at 1351. Similarly, the "recently" terms here are not being used in isolation as descriptive terms

---

[3] Indeed, this strikes the Court as a reasonable calculus to leave to individual practitioners, as there may be both benefits and drawbacks to looking farther back in a user's browsing history. For example, older browsing history can provide more insight and yield more keywords but may also reflect stale information that are no longer relevant to a particular Internet user.

Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER
11

conveying general temporal recency; instead, they are mentioned in the context of compiling a user's browsing or page request history, the specific length of which may be decided by the practitioners of the facility.

Defendants' response to the configurability of the "recently" terms either mischaracterizes or misunderstands those functions. Defs. CC Br. 10–11; Defs. CC Reply 7–8. Defendants first argue that the configurability language itself contains indefinite terms of degree, such as "too early" and "late enough." Defs. CC Br. 10–11 ("How early is too early? How late is late enough?"). Defendants' rhetorical questions, however, are readily dispensed with by the excerpt with full context, which reads:

> In some embodiments, the facility accomplishes such expiration by removing rows from the browsing history table whose times are **too early** to be within the period under consideration. In other embodiments, rather than removing rows from the browsing history table, the facility merely identifies only the pages whose rows have a time **late enough** to be in the period under consideration.

'676 Patent col. 5 l. 53–59 (bold added). With context, the phrases "too early" and "late enough" are clearly being used to describe how a practitioner can either decide to remove rows *before* a definite pre-configured point in time (*i.e.*, "whose times are too early to be within the period under consideration") or to only include rows after a definite pre-configured point in time ("only the pages whose rows have a time late enough to be in the period under consideration"). These examples are wholly consistent with the configurability of the "recently" terms. With the full context of the specification, a POSITA would understand with reasonable certainty that these phrases ("recently visited," "too early," "late enough") are tethered to a configurable (but definite) time period that practitioners establish for themselves.

Defendants also argue that the "recently" terms cannot convey a configurable functionality because the claims use different language to describe configurability. CC Hr'g Tr. 77:10–18; Defs. CC Br. 11–12. Specifically, they point out that Claim 10 of the '676 Patent describes configurability as a "period of time of preselected length." '676 Patent col. 11 l. 5–6. The Court, however, is not certain that "preselected" is synonymous with "configured." This concern is borne out by the fact that "preselected length" is almost exclusively reserved for "instances of electronic

Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER
12

content previously presented," whereas "recently" is used in the context of compiling a user's page request history. *Compare* '676 Patent col. 9 l. 39–43 *with id.* col. 11 l. 3–8. In any event, to the extent there are uncertainties about differentiating the "recently" terms from the "immediately preceding period of time of preselected length" term, Defendants bear the burden to establish by clear and convincing evidence that "recently" is so indefinite that a POSITA cannot discern the scope of the claims with reasonable certainty. If the canon of claim differentiation is the primary thrust of Defendants' evidence, the Court cannot conclude that they have satisfied their burden, especially given that other intrinsic evidence that supports a configurability construction of the "recently" terms.

Based on the specification's description of how a "recently visited" browsing history table may be created, the Court does not find that the "recently" terms are true terms of degree and, therefore, these terms are not indefinite.

### D.     "Mapping" Terms ('676 Patent)

| Plaintiffs' Construction | Defendants' Construction | Court's Construction |
| --- | --- | --- |
| No construction necessary | "using a table or other data structure to establish a direct correspondence between [pages and keywords / advertising messages and keywords]" | "establishing a correspondence between [pages and keywords / advertising messages and keywords" |

The parties dispute four terms that revolve around the interpretation of "mapping" or "mapped": (1) "mapping from pages to keywords describing those pages," (2) "keywords each mapped to from at least one of the pages," (3) "mapping from keywords to advertising messages described by those keywords," and (4) "advertising messages each mapped to from at least one of the identified set of keywords." '676 Patent col. 9 l. 41–47. Defendants propose the following construction for these terms: "using a table or other data structure to establish a direct correspondence between [pages and keywords / advertising messages and keywords]." Plaintiffs assert again that these terms do not need construction and oppose Defendants' construction because (1) mapping can be done without data structures; and (2) mapping need not involve a "direct correspondence."

Case No.:   5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER

The Court agrees with Defendants that the term "mapping" needs some construction, given that it is only referenced in the claims and appears nowhere else in the patent. However, the Court does not find Defendants' "table or other data structure" or "direct correspondence" limitations to be supported by the intrinsic evidence. Turning first to the "table" construction, Defendants rely entirely on the fact that the patent's figures are presented in tables to assert "implicitly a table or other data structure must be used to track these relationships" between keywords and pages or advertising messages. Defs. CC Br. 16–17. However, "importing [a] limitation from an embodiment in the figures . . . is improper." *Polaris Innovations Ltd. v. Brent*, 48 F.4th 1365, 1377 (Fed. Cir. 2022) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.")). To the contrary, the specification expressly disclaims any such limitation based on the tables in the figures: "While FIG. 2 and each of the table diagrams discussed below show a table *whose contents and organization are designed to make them more comprehensible by a human reader*, those skilled in the art will appreciate that actual data structures used by the facility to store this information *may differ from the table shown*." '676 Patent col. 5 l. 14–22. This clarification indicates that, while tables or data structures may be useful for storing and presenting the *results* of "mapping," there is no basis to construe the *process* of "mapping" as requiring the results be presented in a certain format. Accordingly, the "table" limitation in Defendants' proposed construction is not warranted.

Defendants' second limitation regarding "direct correspondence" is somewhat more meritorious but ultimately also too narrow of a limitation. Plaintiffs appear to concede that "mapping" and claim language contemplates *some* type of correspondence, Pl. CC Br. 21–22 (citing a dictionary definition, "to be assigned in a relation or connection"); the main dispute between the parties is whether "mapping" requires a "direct" correspondence. The Court agrees with Plaintiffs that there is no intrinsic evidence that supports a "direct" correspondence limitation on "mapping." First, to the extent that Defendants rely on the figures' "depict[ion of] a table

establishing a direct correspondence between pages and keywords," Defs. CC Br. 16, the figures cannot on their own support a finding that all "mapping" must reflect such a correspondence. *See Liebel-Flarsheim*, 358 F.3d at 913. Second, although they argued at the hearing that "mapping" requires a direct relationship because it is a "restrictive term, it's not associated, it's not related," CC Hr'g Tr. 97:4–8, they have not cited any evidence—intrinsic or extrinsic—in support of such a direct nexus.

Accordingly, the Court agrees that the "mapping" terms could benefit from some further construction, but that Defendants' proposed construction is too limiting. The Court will construe the "mapping" terms to mean "establishing a correspondence between [pages and keywords / advertising messages and keywords]."

### E. "the set of subjects" ('298 Patent)

| Plaintiffs' Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| No construction necessary | Indefinite | Not indefinite |

Finally, Defendants argue that references to "the set of subjects" or "the . . . set of subjects" in dependent claims 13, 14, and 16 of the '298 Patent are indefinite for a lack of antecedent basis. Defs. CC Br. 17–18. Plaintiffs concede that "there is no explicit antecedent basis in claim 13 for 'the set of subject[s]," but submit that the "the set of subjects" refers back to the phrase "a set of keywords" in the independent claim 12.

Neither party can dispute that "the set of subjects" in claim 13 is a term without antecedent basis, because there is no reference to "*a* set of subjects" in either independent claim 12 or elsewhere dependent claim 13. Instead, independent claim 12 only contains references to "a set of *keywords*." '298 col. 10 l. 28. Accordingly, the question now is whether the lack of antecedent basis means the impacted claims "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901.

Plaintiffs submit that a POSITA would understand "the set of subjects" to refer back to the phrase "a set of keywords each relating to at least one of a set of web pages" in Claim 12. Pl. CC Br. 22–23. This reasoning is premised on the proposition that a POSITA would readily

Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER
15

1    understand the relationship between "keywords" and "subjects," that is, a "subject can be a

2    keyword, but not all keywords are subjects." *Id.*; CC Hr'g Tr. 108:4–7.  At the hearing, Plaintiffs

3    stated that dependent claims 13–16 were intended to narrow the scope of independent claim 12

4    because "subjects" is a more restrictive term than "keywords."  CC Hr'g Tr. 105:17–106:2.

5          The Court first notes that, while not logically impossible, Plaintiffs' interpretation is a

6    somewhat strained reading of the dependent claims' operation, especially because there is no

7    indication that the dependent claims were intended to have a different, let alone narrower, scope

8    from independent claim 12.  If anything, the purpose of the dependent claims appears to be to

9    *expand* the application of claim 12, given that dependent claim 13 references "the method *further*

10   *comprising augmenting* the set of subjects."  '298 Patent col. 10 l. 42–45.

11         Notwithstanding Plaintiffs' stretched interpretation, the Court finds that Defendants have

12   failed to establish by clear and convincing evidence that a POSITA cannot determine the scope of

13   claims 12–16 with reasonable certainty.  <u>First</u>, Defendants rest their indefiniteness argument solely

14   on the fact that "subjects" are not "keywords" and, therefore, the terms "the set of subjects" in

15   claims 13–16 are missing antecedent bases.  *See* Def. CC Br. 17–18; Def. CC Reply 14–15.

16   However, "[g]iven the well-settled rule that claims are not necessarily invalid for a lack of

17   antecedent basis," *Microprocessor Enhancement*, 520 F.3d at 1376, it is not enough that

18   Defendants simply identify an instance of missing antecedent basis.  Indeed, even if the abrupt

19   transition from "keywords" to "subjects" was a drafting error, the erroneous missing antecedent

20   does not necessarily cast these claims into so much doubt that a POSITA cannot understand the

21   scope of the claims with reasonable certainty.  *See Trover Grp., Inc. v. Dedicated Micros USA*,

22   2015 WL 1263358, at *9 (E.D. Tex. Mar. 19, 2015) ("*While the error regarding the absent*

23   *antecedent is clumsy*, it does not make it difficult to understand what the limitation covers, and

24   despite the error, a person of skill in the art would readily understand the meaning of the claim.")

25   (emphasis added); *see also Stragent LLC v. Intel Corp.*, 2013 WL 4829897, at *3 (E.D. Tex. Sept.

26   9, 2013) (holding that missing antecedent did not render a claim indefinite, even though a "reading

27   of the patent makes evident that the applicant made a drafting error").  However, other than the

28   Case No.:   5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER
16

United States District Court
Northern District of California

lack of antecedent basis, Defendants do not provide any other reasons as to why the "the set of subjects" would fail to inform a POSITA about the scope of these claims, a burden *Defendants* were required to satisfy by clear and convincing evidence.

Second, the Court finds that, even without antecedent bases, a POSITA could reasonably ascertain the scope of the "set of subjects" terms for the purposes of 35 U.S.C. § 112(a). Despite the divergent references to "keywords" and "subjects," both are preceded by the collective noun "set," *e.g.*, "*a set* of keywords" and "*the set* of subjects." '298 Patent col. 10 l. 28, 43. The consistent use of the word "set" would help key a POSITA into the understanding that "the set" in claim 13 refers back to the "a set" introduced in claim 12. Moreover, there are no other "sets" within claims 12 or 13 that "the set of subjects" could be referring to, nor are there any other similar word-based concepts that "subjects" could be referring to.[4] Within the context of these claims, a POSITA would not have much difficulty in recognizing that the "set of subjects" in claim 13 refers back to the "set of keywords" introduced in claim 12, even if she does not immediately apprehend Plaintiff's nuanced semantics between keywords and subjects.

In summary, the Court finds that, even though the disputed "set of subjects" terms in claim 13–16 do not have direct antecedent bases, Defendants have not demonstrated by clear and convincing evidence that these terms fail to inform a POSITA as to the scope of these claims with reasonable certainty. Given the context and syntax of the claim language, a POSITA would understand that "the set of subjects" terms in dependent claims 13–16 refer back to the "set of keywords" term first introduced in independent claim 12. Therefore, the terms are not indefinite.

**IV.   CONCLUSION**

Based on the foregoing, the Court ORDERS, as follows:

---

[4] From a strictly syntactical perspective, the Court notes that the "keywords" introduced in claim 12 is a broader term than the "subjects" subsequently referenced in claim 13, which would allow for a logically consistent albeit awkward reading. Pl. CC Br. 22. This would not necessarily be true had the order of appearance been reversed, such that the independent claim introduces a narrow term while the dependent claim uses a broader term in referring back.

Case No.:   5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER
17

| Claim Terms | Court's Conclusion |
|---|---|
| "web page" | "a page from a website on the World Wide Web, identified by a unique uniform resource locator (URL)" |
| "keywords" | "words selected to correspond to a web page or advertising message" |
| "pages recently requested by the user"; "pages recently visited by the user" | Not indefinite |
| "mapping from pages to keywords describing those pages"; "keywords each mapped to from at least one of the pages" | "establishing a correspondence between pages and keywords" |
| "mapping from keywords to advertising messages described by those keywords"; "advertising messages each mapped to from at least one of the identified set of keywords" | "establishing a correspondence between advertising messages and keywords" |
| "the set of subjects"; "the . . . set of subjects" | Not indefinite |

**IT IS SO ORDERED.**

Dated: December 18, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:22-cv-04756-EJD
CLAIM CONSTRUCTION ORDER

18