1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6                         SAN JOSE DIVISION

7

8    THE RECEIVERSHIP ESTATE OF            Case No.   22-cv-04756-EJD
     AUDIENCESCIENCE INC., et al.,
9                                          **ORDER GRANTING DEFENDANTS'**
                    Plaintiffs,            **MOTION FOR JUDGMENT ON THE**
10                                         **PLEADINGS**
              v.
11                                         Re: ECF No. 140
     GOOGLE LLC, et al.,
12
                    Defendants.
13

14         Plaintiffs The Receivership Estate of AudienceScience Inc. ("AudienceScience") and

15   Revitalization Partners, L.L.C. ("Revitalization" and, with AudienceScience, "Plaintiffs") bring

16   this action against defendants Google LLC ("Google") and YouTube, LLC ("YouTube and, with

17   Google, "Defendants"), alleging infringement of three patents in violation of 35 U.S.C. § 271.  *See*

18   Compl., ECF No. 1.  Now pending before the Court is Defendants' Motion for Judgment on the

19   Pleadings (the "Motion"), brought pursuant to Federal Rule of Civil Procedure 12(c) on the

20   ground that the claims of the patents at issue are invalid under 35 U.S.C. § 101 because they are

21   directed to patent-ineligible subject matter.  *See* Mot., ECF No. 140.  The Court finds the Motion

22   suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons

23   below, the Court GRANTS the Motion.

24   **I.      BACKGROUND**

25           **A.      Technical Background**

26           Plaintiffs allege that Defendants have infringed and continue to infringe three patents-in-

27   suit (together, the "Patents-in-Suit") owned by AudienceScience, namely U.S. Patent No.

28   Case No.: 22-cv-04756-EJD
     ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS
                                         1

United States District Court
Northern District of California

1    7,747,676 (the "'676 Patent"), ECF No. 1-2; U.S. Patent No. 7,882,175 (the "'175 Patent"), ECF

2    No. 1-3; and U.S. Patent No. 8,082,298 (the "'298 Patent"), ECF No. 1-4.  *See* Compl. ¶¶ 13–16,

3    19, 40, 63.  Each of the Patents-in-Suit claims priority to U.S. Provisional Patent Application No.

4    60/637,681, filed in December 2004.  *See* '676 Patent col. 1 ll. 9–11; '175 Patent col. 1 ll. 9–13;

5    '298 Patent col. 1 ll. 9–15.  The Patents-in-Suit are all directed to the field of electronic advertising

6    and share a common specification.  *See generally* '676 Patent; '175 Patent; '298 Patent; *see also*

7    Opp'n 4, ECF No. 144.  As such, the Court will cite only to the '676 Patent when referring to the

8    common specification.

9         The Patents-in-Suit teach "an approach to selecting advertising messages for presentation"

10   on webpages intended to address the shortcomings of two conventional approaches to selecting

11   advertising.  '676 Patent col. 2 ll. 21–24.  The two conventional approaches described are (1)

12   analyzing the contents of each webpage and selecting advertising based on similar content, and (2)

13   monitoring a user's behavior on a publisher's site, assigning the user to a user segment thought to

14   share common interests, and selecting advertising based on the traits of the user segment.  *See id.*

15   at col. 1 ll.47–col. 2. Ll. 20.  The Patents-in-Suit describe "[a] software and/or hardware facility

16   used by or on behalf of a publisher to select advertising messages for presentation on pages of the

17   publisher web site based upon *both* user history and page context."  *Id.* at col. 2. l. 65–col 3 l. 1

18   (emphasis added).  After identifying advertising messages related to the user history and page

19   context, the described method "then weights each of the collected advertising messages in

20   accordance with its performance score, and randomly selects one or more of the collected

21   advertising messages based on the" performance ratings.  *Id.* at col. 3 ll. 27–30.  The "performance

22   score" is a score maintained by advertisers "indicating the extent to which [each] advertising

23   message has generated revenue when previously presented."  *Id.* at col. 3 ll. 10–13.

24        **B.      Procedural History**

25        Plaintiffs filed their complaint (the "Complaint") in November 2021 in the Western

26   District of Texas.  *See* Compl.  Defendants filed an answer in January 2022.  *See* Answer, ECF

27   No. 28.  The action was transferred to this Court in August 2022.  *See* ECF No. 87.  The Court

28   Case No.: 22-cv-04756-EJD
     ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS

United States District Court
Northern District of California

1    held a *Markman* hearing and claim tutorial in June 2023, and issued a claim construction order on

2    December 18, 2023.  *See* ECF Nos. 122, 123, 139.  In the meantime, Defendants moved to amend

3    their original answer and invalidity contentions in November 2023, *see* ECF No. 133, and filed the

4    instant Motion in December 2023, *see* Mot.  The Court granted the motion to amend, and

5    Defendants filed their amended answer on February 8, 2024.  *See* First Am. Answer ("Am.

6    Answer"), ECF No. 150.  The parties agree that the amended answer does not impact the instant

7    Motion.  *See* ECF No. 147.

8         The Motion was fully briefed on February 16, 2024.  *See* Reply, ECF No. 151.  The Court

9    took the Motion under submission on March 7, 2024.  *See* ECF No. 156.

10   **II.    LEGAL STANDARDS**

11        **A.    Motion for Judgment on the Pleadings (Federal Rule of Civil Procedure 12(c))**

12        "After the pleadings are closed—but early enough not to delay trial—a party may move for

13   judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings under

14   Rule 12(c) challenges the legal sufficiency of the opposing party's pleadings, and is "functionally

15   identical" to a motion to dismiss under Rule 12(b)(6).  *Dworkin v. Hustler Mag., Inc.*, 867 F.2d

16   1188, 1192 (9th Cir. 1989).  "Judgment on the pleadings is properly granted when there is no issue

17   of material fact in dispute, and the moving party is entitled to judgment as a matter of law."

18   *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Heliotrope Gen., Inc. v. Ford Motor*

19   *Co.*, 189 F.3d 971, 979 (9th Cir. 1999)).

20        In evaluating a Rule 12(c) motion, courts must "accept all factual allegations in the

21   complaint as true and construe them in the light most favorable to the non-moving party."  *Id.*

22   (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)).  Although a court generally may not

23   consider materials beyond the pleadings, it may "consider facts that 'are contained in materials of

24   which the court may take judicial notice.'"  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d

25   971, 981 n.18 (9th Cir. 1999) (quoting *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)).

26        **B.    Patent Eligibility (35 U.S.C. § 101)**

27        "Patent eligibility can be determined on the pleadings under Rule 12(c) when there are no

28   Case No.: 22-cv-04756-EJD

ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS

United States District Court
Northern District of California

1    factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of

2    law." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018) (citations

3    omitted).  "An invention is patent-eligible if it fits into one of four statutory categories: processes,

4    machines, manufactures, and compositions." *Intellectual Ventures I LLC v. Cap. One Bank (USA)*

5    ("*Capital One*"), 792 F.3d 1363, 1366 (Fed. Cir. 2015) (citing 35 U.S.C. § 101); *see also, e.g.*,

6    *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).  These

7    broad categories of patent-eligible materials contain certain implicit exceptions, such that "[l]aws

8    of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular*

9    *Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (internal quotation marks and

10   citation omitted).  The Supreme Court has instructed that courts, in evaluating patent eligibility,

11   "must distinguish between patents that claim the building blocks of human ingenuity and those

12   that integrate the building blocks into something more."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,

13   573 U.S. 208, 217 (2014) (internal quotations and citation omitted).

14       When a party argues that a patent's subject matter is directed to an abstract idea and thus

15   not patent-eligible, courts employ a two-step analytical framework.  First, the court must

16   "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S.

17   at 217.  "This inquiry is a 'meaningful one' and 'cannot simply ask whether the claims involve a

18   patent-ineligible concept, because essentially every routinely patent-eligible claim involving

19   physical products and actions involves a law of nature and/or natural phenomenon.'" *Samsung*

20   *Elecs. Co. Ltd. v. Blaze Mobile, Inc.*, 673 F. Supp. 3d 1066, 1072–73 (N.D. Cal. 2023) (quoting

21   *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)); *see also, e.g.*,

22   *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) ("We recognize that

23   'at some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural

24   phenomena, or abstract ideas.'") (internal alterations and punctuation omitted) (quoting *Alice*, 573

25   U.S. at 217).  "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of

26   the specification, based on whether 'their character as a whole is directed to excluded subject

27   matter.'"  *Enfish*, 822 F.3d at 1335 (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790

28   Case No.: 22-cv-04756-EJD
     ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS

United States District Court
Northern District of California

F.3d 1343, 1346 (Fed. Cir. 2015)).  However, "while the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus."  *ChargePoint*, 920 F.3d at 766.

If the court finds the claims are not directed to an abstract idea but rather to patent-eligible subject matter, the inquiry ends in favor of the patent owner.  *See Data Engine*, 906 F.3d at 1007 ("If the claims are not directed to a patent-ineligible concept under *Alice* step 1, 'the claims satisfy § 101 and we need not proceed to the second step.'") (quoting *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018)).  But if the claims are directed to an abstract idea, the court must apply *Alice* step two and "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78 (2012)).  "The second step of the *Alice* test is satisfied when the claim limitations 'involve more than performance of "well-understood, routine, [and] conventional activities previously known to the industry.""'  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014)). Whether the elements of a claim or the claimed combination are well-understood, routine, and conventional activities "is a question of fact" that—if subject to a genuine dispute— "cannot be answered adversely to the patentee based on the sources properly considered on a motion to dismiss,"  *Aatrix*, 882 F.3d at 1128; *see also Dworkin*, 867 F.2d at 1192 ("[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

## III.   DISCUSSION

Defendants argue that Claim 2 of the '676 Patent, Claim 12 of the '175 Patent, and Claim 12 of the '298 Patent are representative of remaining claims in their respective patents, *see* Mot. 7, and that all of the claims recited in the Patents-in-Suit are ineligible under § 101, *see id.* at 7–18. Plaintiffs respond that Defendants' argument is based on inadmissible attorney-created evidence rather than the language of the Patents-in-Suit, so that issues of fact preclude consideration of the

United States District Court
Northern District of California

1  Motion, *see* Opp'n 11–13; that "numerous dependent claims . . . must be considered in a section

2  101 analysis," *see id.* at 11; and that the Patents-in-Suit are directed to patent-eligible subject

3  matter under the *Alice* framework, *see id.* at 13–25.  The Court first addresses whether there exist

4  any factual disputes foreclosing the *Alice* analysis, and—finding none—evaluates which claims, if

5  any, are representative before turning to the substance of the *Alice* analysis.

6         **A.**      **Factual Disputes**

7         Plaintiffs argue that the Motion is premature and precluded by issues of fact.  *See* Opp'n

8  11–13.  Plaintiffs base this argument on Defendants' submission of a color-coded chart reciting

9  the language of each of the claims at issue, *see id.* at 11, and on the assertion that Defendants

10  "present[] attorney argument describing the claimed technology as if they were substantiated

11  expert opinions," *id.* at 12.  With respect to Defendants' chart—submitted in support of their

12  arguments regarding the representative claims, *see* Mot. 7—the Court disagrees with Plaintiffs'

13  argument that Defendants failed to properly rely on the Complaint's exhibits attaching the Patents-

14  in-Suit, as the chart recites verbatim the language of the asserted claims.  Nonetheless, as

15  evidenced below, *see infra*, at Part III(B), the Court does not rely on Defendants' chart in

16  analyzing the representative claims.

17         With respect to Plaintiffs' second argument, it appears to the Court that Plaintiffs have

18  confused the standard for evaluating the existence of factual disputes.  Plaintiffs argue that

19  Defendants' Motion includes attorney argument "in lieu of properly submitted expert testimony,"

20  Opp'n 12, but such testimony would be improper on a Rule 12(c) motion.  *See* Fed. R. Civ. P.

21  12(d) ("If, on a motion under Rule 12(b)(6) or Rule 12(c), matters outside the pleadings are

22  presented to and not excluded by the court, the motion must be treated as one for summary

23  judgment under Rule 56.").  Further, as Plaintiffs note, patent eligibility may be determined on the

24  pleadings "only when there are no factual allegations that, taken as true, prevent resolving the

25  eligibility question as a matter of law."  *Id.* at 12 (quoting *Aatrix*, 882 F.3d at 1125).  Accordingly,

26  "[t]he existence of factual disputes does not render [a Rule 12(c) motion on § 101 ineligibility]

27  improper."  *Barbaro Techs., LLC v. Niantic, Inc.*, 475 F. Supp. 3d 1007, 1011 (N.D. Cal. 2020).

28  Case No.: 22-cv-04756-EJD
ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS

United States District Court
Northern District of California

1    "It simply means all allegations must be accepted as true and construed in the light most favorable

2    to the non-moving party."  *Id.*; *see also Aatrix*, 882 F.3d at 1125; *SAP Am., Inc. v. InvestPic, LLC*,

3    898 F.3d 1161, 1166 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747 (2019), *reh'g denied*, 140 S.

4    Ct. 27 (2019) (noting § 101 ineligibility "may be, and frequently has been, resolved on a Rule

5    12(b)(6) or (c) motion").  Plaintiffs do not identify any factual allegations in the Complaint or the

6    Patents-in-Suit that preclude resolution of a § 101 motion.[1]  The Court thus finds that the Motion

7    is not premature or otherwise precluded by factual disputes.  It considers the parties' arguments

8    based only on the pleadings, including the Patents-in-Suit attached as exhibits to the Complaint.

9           **B.      Representative Claims**

10          "Courts may treat a claim as representative in certain situations, such as if the patentee

11   does not present any meaningful argument for the distinctive significance of any claim limitations

12   not found in the representative claim or if the parties agree to treat a claim as representative."

13   *Berkheimer*, 881 F.3d at 1365 (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352

14   (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 & n.9 (Fed.

15   Cir. 2016)).  Although Plaintiffs state that the Patents-in-Suit include "numerous dependent claims

16   that must be considered in a section 101 analysis," Opp'n 11, they include no argument at all on

17   what those claims might be and what limitations they contain that are not found in the claims

18   Defendants contend are representative, *i.e.*, Claim 2 of the '676 Patent, Claim 12 of the '175

19   Patent, and Claim 12 of the '298 Patent.  However, Plaintiffs argue generally that the Patents-in-

20   Suit include claims directed to two improvements over the conventional approaches to ad

21   selection, *i.e.*, (1) using a performance score and (2) considering both current page context and

22   individual user history, *see* Opp'n 15, and additionally that the Patents-in-Suit assert claims

23   directed to the application of performance scores to execute weighted selections of (1) ads, (2)

24   subjects, and (3) keywords, *see id.* at 9.  Plaintiffs state that Claim 1 of the '676 Patent, Claims 1

25

26   _____

27   [1] As Defendants note, *see* Reply 3, fact discovery had nearly concluded by the time Plaintiffs filed
     their opposition, so that Plaintiffs presumably had the ability to raise any factual issues that may
     have arisen over the course of discovery.

28   Case No.: 22-cv-04756-EJD
     ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS

United States District Court
Northern District of California

and 22 of the '175 Patent, and Claim 1 of the '298 Patent relate to the approach of considering both page context and user history and applying performance scores to ads, and appear to suggest that Claim 1 of the '298 Patent is representative of this group of claims. *See id.* at 15. Plaintiffs further state that Claims 2 and 10 of the '676 Patent, Claims 12 and 33 of the '175 Patent, and Claim 12 of the '298 Patent relate to the application of performance scores to subjects or keywords associated with ads, and appear to suggest that Claim 10 of the '676 Patent is representative of these claims. *See id.* at 16–17.

Having reviewed the claims in each of the Patents-in-Suit, the Court agrees with Plaintiffs that no single claim in any of the patents is entirely representative of the limitations, particularly with respect to whether the claim limitations are directed to the weighting of advertising messages, subjects, or keywords. The Court finds that Claims 1, 2, and 10 of the '676 Patent are representative of the remainder of the claims in that patent, and likewise with Claims 1, 12, and 33 of the '175 Patent and Claims 1 and 12 of the '298 Patent (collectively, the "Representative Claims").[2] Further, Claim 1 of each of the Patents-in-Suit are representative of the claims across the three patents that recite a method—or computer-readable device that causes the computer to perform the method[3]—for selecting advertising messages based on the weighting of advertising messages by revenue generation; Claim 2 of the '676 Patent and Claim 12 of the '175 Patent are representative of claims reciting a method or device for ad selection based on weighting advertising subjects by revenue generation; and Claim 10 of the '676 Patent, Claim 33 of the '175 Patent, and Claim 12 of the '298 Patent are representative of claims reciting a method or device for ad selection based on weighting advertising keywords (which describe advertising subjects) by revenue generation. The Representative Claims are copied below.

---

[2] Although the Court's list of representative claims differs from that proposed by Defendants, Defendants' arguments under *Alice* are applicable because they address the same set of limitations; the Court has merely expanded the claims necessary to represent those limitations.

[3] The Court notes that the limitations of the "device" claims expressly relate to the "method" that the device causes a computing system to perform. *See, e.g.*, '676 Patent, Claim 2; '175 Patent, Claim 22.

### 1.    '676 Patent

#### a.    Claim 1

**1.** A method performed by a computing system having a processor and a memory for selecting an advertising message for inclusion in a requested web page, comprising:

> receiving a page request sent by a user identifying the requested page;
>
> adding the requested page to a page request history listing pages recently requested by the user;
>
> using a mapping from pages to keywords describing those pages to identify a set of keywords each mapped to from at least one of the pages listed in the page request history;
>
> using a mapping from keywords to advertising messages described by those keywords to identify a set of advertising messages each mapped to from at least one of the identified set of keywords;
>
> to each of the identified set of advertising messages, attributing a selection weighting reflecting the advertising message's relative performance, wherein the relative performance is determined by a performance score that indicates the extent to which the advertising message has generated revenue;
>
> selecting one advertising message of the identified set of advertising messages in accordance with the selection weightings attributed to the advertising messages of the identified set of advertising messages; and
>
> responding to the page request with a version of the requested page that includes an instruction to display the selected advertising message within the page, wherein code implementing the method is stored in the memory of the computing system for execution by the processor of the computing system.

#### b.    Claim 2

**2.** A computer-readable storage medium whose contents cause a computing system to perform a method for designating an advertising message for inclusion in a requested page, and method comprising:

> receiving a page request sent by a user identifying the requested page;
>
> determining a set of subjects each relating to at least one of a set of pages recently visited by the user, the set of pages including the requested page by virtue of the page request for the requested page;
>
> from among the set of subjects, randomly selecting one subject in accordance with a selected weighting for each subject based upon a performance score attributed to the subject that reflects the performance of advertising messages selected using the subject, wherein the performance score indicates the extent to which the advertising messages selected using the subject have generated revenue; and
>
> responding to the page request with a version of the requested page that includes an instruction to select an advertising

Case No.: 22-cv-04756-EJD
ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS
9

message for display within the page on the basis of the selected subject.

### c.      Claim 10

**10.**  A method performed by a computing system having a processor and a memory for designating an advertising message to present to a user via a selected device in connection with a selected instance of electronic content presented via the selected device, comprising:

for the selected instance of electronic content and any other instances of electronic content previously presented via the selected device during an immediately preceding period of time of preselected length, distinguishing any keywords identified as corresponding to the instance of electronic content;

weighting each of the distinguished keywords based upon the expected level of performance of advertising messages identified as corresponding to the distinguished keyword, wherein the expected level of performance indicates the extent to which advertising messages selected using the distinguished keyword have generated revenue; and

randomly selecting one of the distinguished keywords in accordance with their weights for use in selecting an advertising message to present in connection with the selected instance of electronic content via the selected device, wherein code implementing the method is stored in the memory of the computing system for execution by the processor of the computing system.

### 2.      '175 Patent

### a.      Claim 1

**1.**  A method in a computing system for selecting an advertising message for inclusion in a requested page, comprising:

receiving a page request sent by a user identifying the requested page;

determining a set of subjects each relating to at least one of a set of pages recently visited by the user, the set of pages including the requested page by virtue of the page request for the requested page;

from among a set of advertising messages each indicated to relate to at least one of the set of subjects, randomly selecting one advertising message in accordance with a selection weighting for each advertising message based upon the performance of the advertising message, wherein the performance of the advertising message is determined by a performance score that indicates the extent to which the advertising message has generated revenue; and

responding to the page request with a version of the requested page that includes the selected advertising message.

### b.      Claim 12

12.   A computer-readable storage device whose contents cause a computing system to perform a method for designating an advertising message for inclusion in a requested web page, the method comprising:

receiving a web page request set by a user identifying the requested web page;

identifying a set of subjects each relating to at least one of a set of web pages recently visited by the user, the set of webpages including the requested web page by virtue of the web page request for the requested web page;

from among the set of subjects, selecting one subject in accordance with a selection weighting for each subject based upon a performance score attributed to the subject that reflects the performance of advertising messages selected using the subject, wherein the performance score indicates the extent to which the advertising messages selected using the subject have generated revenue; and

responding to the web page request with a version of the requested web page that includes an instruction to select an advertising message for display within the web page on the basis of the selected subject.

### c.      Claim 33

33. A method for designating an advertising message to present to a user via a selected device in connection with a selected instance of electronic content presented via the selected device, comprising:

for the selected instance of electronic content and any other instances of electronic content previously presented via the selected device during preceding period of time of preselected length, distinguishing any keywords identified as corresponding to the instance of electronic content;

weighting each of the distinguished keywords based upon the expected level of performance of advertising messages identified as corresponding to the distinguished keyword, wherein the expected level of performance indicates the extent to which advertising messages selected using the distinguished keyword have generated revenue; and

selecting one of the distinguished keywords in accordance with their weights for use in selecting an advertising message to present in connection with the selected instance of electronic content via the selected device.

### 3.      '298 Patent

### a.      Claim 1

1. A method in a computing system for selecting an advertising message for inclusion in a requested page, comprising:

receiving a page request sent by a user identifying the requested page;

from among a set of advertising messages each indicated to relate to at least one of a set of subjects, randomly selecting one advertising message in accordance with a selection weighting

for each advertising message based upon the performance of the advertising message, wherein the performance of the advertising message is determined by a performance score that indicates the extent to which the advertising message has generated revenue; and

responding to the page request with a version of the requested page that includes the selected advertising message.

### b.    Claim 12

**12.**  A computer-readable device whose contents cause a computing system to perform a method for designating an advertising message for inclusion in a requested web page, the method comprising:

receiving a web page request set by a user identifying the requested web page;

identifying a set of keywords each relating to at least one of a set of web pages recently visited by the user;

from among the set of keywords, selecting one keyword in accordance with a selection weighting for each keyword based upon a performance score attributed to the keyword that reflects the performance of advertising messages selected using the keyword, wherein the performance score indicates the extent to which the advertising messages selected using the keyword have generated revenue; and

responding to the web page request with a version of the requested web page that includes an instruction to select an advertising message for display within the web page on the basis of the selected keyword.

### C.    *Alice* Step One – Whether the Claims are Directed to an Abstract Idea

Defendants argue that the claims in the Patents-in-Suit are "directed to the abstract idea of using information about a consumer's interests and past ad performance to target ads to the consumer."  Mot. 8.  Plaintiffs counter that the claims "are not abstract (and thus pass the first step of the *Alice* test) because they are directed to specific improvements to Internet ad technology."  Opp'n 17.  More specifically, Plaintiffs argue that "the use of performance scores to allow a weighted selection of ads is a new and useful feature" that "improves upon the functionality of Internet advertising."  *Id.* at 18–19.  Plaintiffs further argue that "Internet ad systems have access to information not otherwise obtainable or usable by traditional media" and that the Patents-in-Suit recite specific improvements to "leverage this new information in novel ways to allow webpages and other online services to deliver relevant, useful, and interesting ads to end users – all in a technological manner, *e.g.*, using Internet ad servers."  *Id.* at 19.  Plaintiffs concede that information tailoring is not new, but argue that their claims "are not limited to that practice, but to

Case No.: 22-cv-04756-EJD
ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS

1   a solution to an Internet-centric problem caused by electronic advertisement technology" because

2   the claims "explain exactly how advertisements are selected . . . by virtue of implementing a

3   performance score and a weighted selection of ads." *Id.* at 20.

4       "In this first step" of the *Alice* test, the Court "consider[s] the claims 'in their entirety to

5   ascertain whether their character as a whole is directed to excluded subject matter.'" *ChargePoint*,

6   920 F.3d at 766 (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346

7   (Fed. Cir. 2015)).  Claim 10 of the '676 Patent and Claim 33 of the '175 Patent both culminate in

8   the selection of a keyword "for use in selecting an advertising message," and the remaining

9   Representative Claims recite a response to a user's web page request with either a selected

10  advertising message or a computer-readable instruction to select an advertising message.  Claim

11  10 of the '676 Patent and Claim 33 of the '175 Patent begin with a step of distinguishing a set of

12  keywords based on the recent prior history of a user's electronic device, while the remaining

13  Representative Claims begin with the receipt of a user's web page request.  The intervening steps

14  of the Representative Claims all involve the identification or use of keywords or subjects related to

15  the requested web page or previously viewed electronic content in order to create either a set of

16  advertising messages from which one will be selected for display, or (in the case of Claim 10 of

17  the '676 Patent and Claim 33 of the '175 Patent) or a set of keywords from which a keyword will

18  be selected for use in selecting an advertisement to display.  Lastly, each claim teaches a

19  weighting of either advertising messages, keywords, or subjects by scoring based on revenue

20  generation.  The claim language, considered as whole, appears directed to the idea of targeting

21  advertisements to internet users to maximize revenue generation.

22      The common specification of the Patents-in-Suit supports this understanding of the claim

23  language.  The specification's "Background" section states that "[p]ublishers have an incentive to

24  maximize the extent to which the advertising messages presented to each user are relevant to that

25  user," and  that "the greater [the] extent to which the advertising messages presented to a

26  particular user are relevant to that user, the more revenue the publisher can expect to derive from

27  presenting" the advertisement.  '676 Patent, col. 1 ll. 38–43.  Based on this contextual framework,

28  Case No.: 22-cv-04756-EJD
    ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS
                                13

United States District Court
Northern District of California

the Patents-in-Suit begin the "Detailed Description" section by explaining that the claims teach a "facility used by or on behalf of a publisher to select advertising messages for presentation . . . based upon both user history and page context." *Id.* at col. 2 l. 65–col. 3 l. 1.   Accordingly, "embodiments of the facility are able to take advantage of both page context and user history to select advertising messages likely to be relevant to the user, the most remunerative to the publisher, and/or the most effective for the advertiser." *Id.* at col. 4 ll. 31–36.

Accordingly, based on the language of the Representative Claims and the common specification, the Court determines that the claims asserted by Plaintiffs are directed to the idea of targeting advertisements to internet users to maximize revenue generation.  The Federal Circuit has repeatedly held that the concept of tailoring advertisements to a viewer based on various collected information is an abstract idea under *Alice* step one.  *See Capital One*, 792 F.3d at 1370 ("An advertisement taking into account the time of day and tailoring the information presented to the user based on that information is another 'fundamental . . . practice long prevalent in our system . . . .'") (quoting *Alice*, 573 U.S. at 219); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887 (Fed. Cir. 2019) ("Targeted marketing is a form of 'tailoring information based on [provided] data,' which we have previously held is an abstract idea.") (alternation in original) (quoting *Capital One*, 792 F.3d at 1369); *In re Morsa*, 809 F. App'x 913, 917 (Fed. Cir. 2020) ("Here, the claim recites both targeted advertising and bidding to display the advertising, which are both abstract ideas relating to customizing information based on the user and matching them to the advertiser.") (quoting *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017)).  And no party suggests that the idea of maximizing revenue is anything but a "fundamental economic practice long prevalent in our system of commerce." *Alice*, 573 U.S. at 219 (quoting *Bilski v. Kappos*, 561 U.S. 593, 611 (2010)).

Further, although Plaintiffs argue that the Patents-in-Suit are directed to specific technological improvements and solve an internet-centric problem in advertising, *see* Opp'n 18–20, the Court can find nothing in the Complaint, the Patents-in-Suit, or Plaintiffs' Opposition that indicates such a problem or solution.  According to the common specification of the Patents-in-

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Suit, the prior art related to internet advertising used either page context or user history to tailor

2   web page advertisements, and the primary claimed advance is the use of *both* sets of information.

3   *See* '676 Patent, col. 1 ll. 47–51, col. 2 ll. 1–3, col. 2 l. 65–col. 3 l. 1.  The problem solved by this

4   advance is one of better tailoring of information, which is not internet-centric; as such, the Patents-

5   in-Suit recite an application of the idea of using additional targeting information to an internet

6   environment.  *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014)

7   (noting that solution "for resolving [a] particular Internet-centric problem" may be patent eligible,

8   but that application of a "known business process to the particular technological environment of

9   the Internet" does not confer eligibility); *Enfish*, 822 F.3d at 1338 (distinguishing inventions that

10  "simply add[] conventional computer components to well-known business practices" from those

11  "directed to an improvement in the functioning of a computer"); *cf. Klaustech, Inc. v. AdMob, Inc.*,

12  No. C 10-05899, 2015 WL 10791915, at *3 (N.D. Cal. Aug. 31, 2015) (finding claimed invention

13  solved technical problem unique to internet technology where invention related to non-scrolling

14  advertisement display frame on internet browser and allowed ad frame to appear in browser

15  without being part of hosting website).[4]

16          Likewise, the performance score concept is directed to the decidedly non-internet-centric

17  problem of selecting the most effective ad—in terms of revenue generation—for a given audience.

18  *See, e.g.*, *Capital One*, 792 F.3d at 1370 ("For example, a television channel might choose to

19  present a commercial for children's toys during early morning cartoon programs but beer during

20  an evening sporting event."); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed.

21  Cir. 2014) ("Although certain additional limitations, such as consulting an activity log, add a

22  degree of particularity, the concept embodied by the majority of the limitations describes only the

23

24  ─────────────────────
    [4] Plaintiffs also cite to *Google LLC v. EcoFactor, Inc.*, 602 F. Supp. 3d 1265 (N.D. Cal. 2022), but
25  this case concerns specific improvements to a physical HVAC system and is thus inapposite,
    particularly in light of the numerous cases regarding advertising technology decided by courts in
26  this district and by the Federal Circuit.  *See Samsung Elecs.*, 673 F. Supp. 3d at 1075 ("Whether or
    not an idea is abstract is generally determined by 'comparing claims at issue to those claims
27  already found to be directed to an abstract idea in previous cases.'") (alterations omitted) (quoting
    *Enfish*, 822 F.3d at 1334).
28  Case No.: 22-cv-04756-EJD
    ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS
                                    15

abstract idea of showing an advertisement before delivering free content.").  Plaintiffs' arguments about the specific limitations of the performance score, *see* Opp'n 20, are relevant to step two of *Alice*, rather than step one, and the Court evaluates those arguments in the following section.  *See Affinity Labs*, 838 F.3d at 1257–58 (explaining that the "abstract idea" inquiry requires evaluation of the "claims 'character as a whole,'" while the "'inventive concept' step requires us to look with more specificity at what the claim elements add") (citations omitted).

For the foregoing reasons, the Court finds that the Representative Claims are directed to the abstract idea of targeting advertisements to internet users to maximize revenue generation, and turns now to step two of the *Alice* test.

### D.   *Alice* Step Two – Whether the Claims Recite an Inventive Concept

Step two of the *Alice* analysis requires that the Court engage in a search for an "inventive concept," *i.e.*, a review of the claim elements, both individually and as an ordered combination, for a concept that "in practice amounts to significantly more than a patent upon the [abstract idea] itself."  *Mayo*, 566 U.S. at 72–73 (citation omitted); *see also Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) ("An inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer.") (citing *Alice*, 573 U.S. at 223).  A claim may be patent-eligible where an ordered combination of elements provides a technical improvement over the prior art, even if its individual elements are generic or conventional.  *See, e.g.*, *Bascom*, 827 F.3d at 1350 (holding claims patent-eligible due to "an inventive concept . . . in the non-conventional and non-generic arrangement of [the] known, conventional pieces").

Defendants argue that Plaintiffs' claimed invention lacks any inventive concept because the claims recite only "generic computer components" such as a CPU, memory, and network connection; the Patents-in-Suit do not describe specific mechanisms for accomplishing the steps but instead "treat each of these [components] as well-understood steps"; the use of past advertisement and keyword performance is "merely implementing a task of organizing web pages

Case No.: 22-cv-04756-EJD
ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS

United States District Court
Northern District of California

and advertising messages"; and the dependent claims add only abstract ideas.  *See* Mot. 15–18.

Plaintiffs counter that the common specification's description of the process for selecting

advertising messages based on user history, page context, and performance scores—which the

Court must take as true on a motion for judgment on the pleadings—requires the conclusion that

the claims "are plausibly directed to specific improvements in Internet advertising technology over

the conventional approaches described in the specification."  Opp'n 23.  Plaintiffs further

"invite[]" the Court to consider the Statements of Reasons for Allowability from the PTO, which

are "part of the public record," and argue that Defendants' description of the claims is overly

reductive and "misses the point that the conventional approaches were problematic, and the

Asserted Patents disclose a novel solution of performance scores to select ads based for individual

users . . . among other things, to overcome the issues."  *Id.* at 24–25.  Additionally, Plaintiffs

argue—albeit in their discussion of *Alice* step one, *see* Opp'n 20—that the leveraging of

performance scores to select and deliver advertisements is an inventive improvement, and that the

claims "explain exactly how advertisements are selected."

Plaintiffs' argument boils down to the circular position that the Patents-in-Suit recite an

inventive concept because they state that the claimed invention "overcame some or all of the

shortcomings of the [] conventional approaches," *see* '676 Patent, col. 2 ll. 22–24, and then

describe the steps recited in the claims.  *See* Opp'n 22–23.  But accepting this position leads to the

incorrect conclusion that essentially no infringement suit could be dismissed on the pleadings, as

patents generally—if not always—explain the purported advances over the prior art.  *See In re*

*Morsa*, 809 F. App'x at 918 ("Although Mr. Morsa alleges that the Proposed Claims are 'directed

to improving an existing technological process in the technical field of advertising over the

Internet/computer networks,' . . . we have recognized that similar claims directed to advertising do

not 'transform the abstract idea into a patent-eligible invention.") (internal alterations and citations

omitted).  The *Alice* step two analysis requires more than the acceptance of the general statement

in the common specification that the Patents-in-Suit are directed to overcoming identified

shortcomings of the prior art approaches.  *See Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x

495, 499 (Fed. Cir. 2020) ("Step two 'looks more precisely at what the claim elements add' to determine if 'they identify an inventive concept in the application of the ineligible matter to which . . . the claim is directed.'") (quoting *SAP*, 898 F.3d at 1167).

Reviewing the elements of the Representative Claims and the common specification first shows that "neither the claim[s] nor the specification provide[] for implementation of the abstract idea using anything other than existing, conventional technology." *Cisco*, 813 F. App'x at 499. The Representative Claims recite steps using conventional computer technologies such as "a computing system," "a processor," "a memory," "a computer-readable storage medium," and "a computer-readable device." *See, e.g.*, '676 Patent, cl. 1; '175 Patent, cl. 12; '298 Patent, cl. 12. Further, the common specification itself describes as "conventional" the two independent advertising methods—*i.e.*, the use of user history or page context to target an internet advertisement to a user—that the Patents-in-Suit claim to combine. *See* '676 Patent, col. 1 l. 47–col. 2 l. 20. The recitation in the claims of the combination of these conventional approaches involves generic steps such as adding a page request to a user's page request history and mapping descriptions—whether keywords or subject tags—of the current page and prior pages to advertisements. *See* '676 Patent, cl. 1; '175 Patent, cls. 1, 12; '298 Patent, cls. 1, 12; *see also* '676 Patent, cl. 10 (reciting use of keyword descriptions of prior electronic content, rather than web pages, accessed by user on a device); '175 Patent, cl. 33 (same); *id.* cl. 22 (same except using "subject" descriptions rather than keywords).

Nor does the selection of an advertisement using weighted performance scores for subjects, keywords, or advertising messages constitute an inventive concept. First, although Plaintiffs argue that the weighting of advertisements or their keyword and subject descriptors by revenue was an advancement over prior art, neither the Complaint nor the Patents-in-Suit contain any allegations or statements to this effect. *See generally* Compl.; '676 Patent; '175 Patent; '298 Patent. Nonetheless, the Court will make this inference in Plaintiffs' favor in evaluating this pleading-stage motion. Even so assuming, it is telling that the Patents-in-Suit do not describe a precise method of weighting beyond stating that the relevant category to be weighted, *i.e.*, advertising

United States District Court
Northern District of California

1  messages, keywords, or subjects, is to be rated by revenue generated.  *See, e.g.*, '676 Patent, col. 3

2  ll. 10–13 ("The advertiser further maintains a performance score for each advertising message

3  indicating the extent to which the advertising message has generated revenue when previously

4  presented."); *id.* cl. 1, col. 9 ll. 48–53 ("attributing a selection weighting reflecting the advertising

5  message's relative performance . . . determined by a performance score that indicates the extent to

6  which the advertising message has generated revenue").  So described, the performance score

7  recites the essential concept of ranking an advertisement by economic performance, which goes to

8  the central purpose of advertising and, without a more specific method of weighting which can be

9  evaluated for inventiveness, cannot be said to add an inventive concept to advertising on the

10  internet or otherwise.  *See Cisco*, 813 F. App'x at 496, 499 (affirming Rule 12(c) dismissal of

11  claim "directed to the abstract idea of 'ranking stations based on antenna performance

12  characteristics and selecting the station with the highest rank to act as master in a network'" where

13  alleged inventive concept of forming network with stations ranked by antenna performance was

14  "coincident with the abstract idea itself").

15      Accordingly, the Court finds that the Representative Claims do not include individual

16  elements or an ordered combination of elements that "'transform[s] the nature of the claim' into a

17  patent-eligible application."  *Alice*, 573 U.S. at 218 (quoting *Mayo*, 566 U.S. at 78–79).  Further,

18  because the Court's findings in each step of the *Alice* analysis is based on the language of the

19  Patents-in-Suit, it finds that amendment of the Complaint would be futile.

20  //

21  //

22

23

24

25

26

27

28  Case No.: 22-cv-04756-EJD
ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS

IV.    **CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that Defendants' motion for judgment on the pleadings is GRANTED.  The Complaint is DISMISSED WITHOUT LEAVE TO AMEND.  Accordingly, Defendants' recently filed Motion for Leave to Amend First Amended Answer, ECF No. 165, the accompanying administrative motions to seal, ECF Nos. 163–64, and all pending dates and deadlines are TERMINATED AS MOOT.

The Clerk of Court shall close the file in this matter.

**IT IS SO ORDERED.**

Dated: May 2, 2024

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 22-cv-04756-EJD
ORDER GRANTING DEFS.' MOT. J. ON THE PLEADINGS
20